UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                              Plaintiff,

              v.                                          **DECISION AND ORDER**
                                                         09-CV-849S
ERIE COUNTY, NY,
CHRIS COLLINS,
        *County Executive*,
ANTHONY BILLITTIER, IV, M.D.
        *County Health Commissioner*,
TIMOTHY B. HOWARD,
        *Erie County Sheriff*,
RICHARD T. DONOVAN,
        *Erie County Undersheriff*,
ROBERT KOCH,
        *Superintendent Administrative Services Division,*
        *Jail Management Division*,
BARBARA LEARY,
        *First Deputy Superintendent,*
        *Erie County Holding Center*,
DONALD LIVINGSTON,
        *First Deputy Superintendent,*
        *Erie County Correctional Facility*,

                              Defendants.

## I. INTRODUCTION

In November 2007, the Civil Rights Division of the U.S. Department of Justice began

investigating conditions at the Erie County Holding Center ("ECHC") and Erie County

Correctional Facility ("ECCF") (collectively, "the facilities").

At the end of the two-year investigation, the Justice Department notified Erie County

through a "Findings Letter" that, in its view, confinement conditions at the facilities violated

the federal constitutional rights of inmates incarcerated there.  In particular, the Justice

1

Department maintained that due to certain practices — including the failure to provide protection from physical and sexual abuse, failure to provide adequate medical and mental health care, and failure to provide safe and sanitary environmental conditions — Erie County was not adequately protecting inmates from serious harm or the risk of serious harm.

Pre-suit efforts to resolve these concerns failed. Consequently, on September 30, 2009, the Justice Department sued Erie County and various county officials pursuant to the Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA"), 42 U.S.C. § 1997, et seq. The Justice Department seeks to enjoin Defendants from depriving incarcerated individuals of their constitutional rights, privileges, and immunities.

On October 21, 2009, Defendants moved to dismiss the Justice Department's complaint.[1] While that motion was pending, the Justice Department moved for pre-answer, expedited discovery related to suicide prevention protocols at the ECHC. This Court granted that motion on March 6, 2010, and indicated at that time that Defendants' Motion to Dismiss would be denied in a decision to follow. The parties then engaged in substantial mediation efforts, culminating in several lengthy, in-person sessions in Buffalo, NY, during the week of May 17, 2010. Discussions continued, and on June 22, 2010, this Court approved the parties' settlement concerning suicide prevention and related mental health issues.[2]

---

[1] Defendants filed their Motion to Dismiss on October 21, 2009. (Docket Nos. 13-15.) The Justice Department responded in opposition on November 23, 2009. (Docket No. 19.) Defendants filed a reply in further support of their motion on December 7, 2009. (Docket No. 21.) This Court held oral argument on December 16, 2009, and reserved decision at that time. (Docket No. 23, 24.)

[2] This Court commends counsel and the mediator for their considerable efforts.

For the reasons stated below, this Court finds that the CRIPA is not unconstitutional as applied to Defendants and that the Justice Department's complaint, although technically compliant with the federal rules, must be amended to clarify the allegations against each defendant. Defendants' Motion to Dismiss is denied.

## II. BACKGROUND

**A. CRIPA**

The CRIPA authorizes the United States to seek injunctive relief against any state, political subdivision of a state, or official, employee, or agent thereof, whenever the Attorney General has reasonable cause to believe that such party is subjecting institutionalized persons to "grievous harm" caused by "egregious or flagrant conditions which deprive [them] of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States," and that the deprivation is pursuant to "a pattern or practice of resistance to the full enjoyment of such rights, privileges, or immunities." 42 U.S.C. § 1997a (a);[3] <u>Messier v. Southbury Training Sch.</u>, 916 F.Supp. 133, 137 (D.Conn.

---

[3]Forty-two U.S.C. § 1997a (a) provides as follows:

> Whenever the Attorney General has reasonable cause to believe that any State or political subdivision of a State, official, employee, or agent thereof, or other person acting on behalf of a State or political subdivision of a State is subjecting persons residing in or confined to an institution, as defined in section 1997 of this title, to egregious or flagrant conditions which deprive such persons of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States causing such persons to suffer grievous harm, and that such deprivation is pursuant to a pattern or practice of resistance to the full enjoyment of such rights, privileges, or immunities, the Attorney General, for or in the name of the United States, may institute a civil action in any appropriate United States district court against such party for such equitable relief as may be appropriate to insure the minimum corrective measures necessary to insure the full enjoyment of such rights, privileges, or immunities, except that such equitable relief shall be available under this subchapter to persons residing in or confined to an

1996).

To remedy unlawful deprivations, the Attorney General may seek "such equitable relief as may be appropriate to insure the minimum corrective measures necessary to insure the full enjoyment of such rights, privileges, or immunities." Id. For persons institutionalized in "a jail, prison, or other correctional facility," such as here, equitable relief is available to remedy only those conditions that deprive them of their rights, privileges, or immunities secured or protected by the federal Constitution. 42 U.S.C. §§ 1997 (1)(A) and (B)(ii); 42 U.S.C. § 1997a (a).

At the time a CRIPA suit is brought, the Attorney General must personally certify to the court that, at least 49 calendar days before bringing suit, he notified the Governor or other appropriate state official in writing of (1) the alleged unconstitutional conditions and pattern or practice of resistance; (2) the facts supporting those allegations, including the relevant dates or time period, the identity of all persons reasonably suspected of being involved in causing the conditions and pattern or practice; and (3) the date the Attorney General first learned of the allegations. See 42 U.S.C. § 1997b (a)(1).

The statute also requires that the Attorney General set forth his pre-litigation efforts at resolving the matter. The Attorney General must certify that he notified the Governor or other appropriate state official in writing that he intended to start an investigation of an institution and that he provided this notice seven days before beginning the investigation. See 42 U.S.C. § 1997b (a)(2).

---

institution as defined in section 1997(1)(B)(ii) of this title only insofar as such persons are subjected to conditions which deprive them of rights, privileges, or immunities secured or protected by the Constitution of the United States.

The Attorney General must also certify that

> (A) the Attorney General has made a reasonable good faith effort to consult with the Governor or chief executive officer and attorney general or chief legal officer of the appropriate State or political subdivision and the director of the institution, or their designees, regarding financial, technical, or other assistance which may be available from the United States and which the Attorney General believes may assist in the correction of such conditions and pattern or practice of resistance;

> (B) the Attorney General has encouraged the appropriate officials to correct the alleged conditions and pattern or practice of resistance through informal methods of conference, conciliation and persuasion, including, to the extent feasible, discussion of the possible costs and fiscal impacts of alternative minimum corrective measures, and it is the Attorney General's opinion that reasonable efforts at voluntary correction have not succeeded; and

> (C) the Attorney General is satisfied that the appropriate officials have had a reasonable time to take appropriate action to correct such conditions and pattern or practice, taking into consideration the time required to remodel or make necessary changes in physical facilities or relocate residents, reasonable legal or procedural requirements, the urgency of the need to correct such conditions, and other circumstances involved in correcting such conditions[.]

42 U.S.C. § 1997b (a)(2)(A)-(C).

Finally, the Attorney General must certify that he believes that filing suit under CRIPA "is of general public importance and will materially further the vindication of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 42 U.S.C. § 1997b (a)(3).

The Attorney General's certification is final and not subject to judicial review. United States v. State of New York, 690 F.Supp. 1201, 1204 (W.D.N.Y. 1988); see also McDonald

v. Rivera, No. 9:06-CV-410, 2008 WL 268345, at *10 (N.D.N.Y. Jan. 30, 2008).

**B.    The Justice Department's Complaint**

The Justice Department alleges that Defendants have been deliberately indifferent to the health and safety of ECHC and ECCF inmates, in violation of the Eighth and Fourteenth Amendments, by repeatedly disregarding known or serious risks of harm both at the ECHC, which houses pre-trial detainees, and the ECCF, which houses convicted individuals.  (Complaint, ¶¶ 18-20, 28.)

The allegations in the complaint are further detailed in two attachments to it — the Attorney General's certification (described above) and the "Findings Letter" that the Justice Department sent to the County Executive of Erie County.  See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991); Brass v. Am. Firm Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Fed. R. Civ. P. 10(c).  For purposes of Defendants' Motion to Dismiss, the factual allegations in these documents are accepted as true.  See Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).

The Justice Department alleges a number of failures in the operation of the facilities.

First, it alleges that Defendants have repeatedly failed to prevent staff from inflicting serious physical and sexual abuse on inmates and that these failures continue to exist, even in the face of multiple incidents in which inmates have been assaulted.  (Complaint, ¶ 21 (a) and (b).)

Second, it alleges that Defendants have repeatedly failed to protect inmates from serious harm inflicted by other inmates, despite multiple instances of inmate-on-inmate assault.  (Complaint, ¶ 22.)  These failures include (1) failing to protect vulnerable or at-risk inmates from physical abuse; (2) failing to protect vulnerable inmates from sexual abuse

6

by other inmates; and (3) failing to implement an inmate classification system that adequately assesses the risk factors for inmate-on-inmate violence. (Complaint, ¶ 23 (a)–(c).)

Third, the Justice Department alleges that Defendants fail to provide adequate mental health and medical services to inmates with known or obvious serious mental health and medical needs. (Complaint, ¶ 23.) In particular, Defendants allegedly provide inadequate suicide prevention and mental health care, inadequate management of medical services and treatment, inadequate administration of medication, and inadequate infection control. (Complaint, ¶ 23(a)–(d).)

Finally, the Justice Department maintains that the physical environment at the ECHC poses an unreasonable risk of serious harm to inmates' health and safety. (Complaint, ¶ 24.) It further alleges that despite known and obvious risks, Defendants have failed to correct facility maintenance problems that pose a risk of harm to the safety of inmates and staff within the facility and its exterior. (Complaint, ¶ 24.)

Each of these allegations is also detailed in the 50-page Findings Letter attached to the Complaint, which is further discussed below.

## III. DISCUSSION

Defendants seek dismissal of the Justice Department's complaint on three grounds. First, they argue that the CRIPA is unconstitutional as applied. Second, they argue that the form of the complaint violates Rules 8 and 10 of the Federal Rules of Civil Procedure. Finally, they contend that the complaint fails to sufficiently state claims upon which relief

can be granted.  This Court addresses Defendants' arguments in turn.

## A.    Constitutionality of the CRIPA

Defendants argue that the CRIPA, though facially constitutional, is unconstitutional as applied in this case.  Their position, however, appears more an objection to the Justice Department's enforcement strategy than a pointed challenge to the constitutionality of the CRIPA.

Defendants first argue that the Justice Department is exceeding its enforcement authority by seeking imposition of nationalized prison practices or "best practices," instead of minimum corrective measures, which is the remedy the CRIPA authorizes.  <u>See</u> 42 U.S.C. § 1997a (a).  They argue that Congress never intended for the CRIPA to be used to force state and local institutional facilities to implement the federal government's perceived best practices.

But the premise of this argument is faulty: the Justice Department is not seeking imposition of "best practices."  Rather, the complaint plainly seeks, among other things, an injunction "requiring Defendants to take such actions as will ensure lawful conditions of confinement are afforded to inmates at ECHC and ECCF." (Complaint, Wherefore Clause, ¶ c.)  And at oral argument, counsel for the Justice Department disclaimed any notion that it is seeking imposition of "best practices."  The following exchanges occurred:

> The Court:    Where – where in the complaint is the government seeking imposition of best practices?  Where?  It doesn't say that. At least my reading, I can't find it.  I mean, I know what you're arguing.

| | |
|---|---|
| Ms. Green:[4] | I agree that the complaint itself absolutely does not say best practices. But, assuming arguendo that this Court were to accept the proposition by the government that they're going to - - that the letter is incorporated into the complaint, and it becomes a sufficient pleading for that purpose, which we don't concede, that's where the best practice comes in. |
| The Court: | Stay right there. Mr. Bagenstos, what are you - - you know, what - - what are you seeking here? Are you seeking imposition of best practices? |
| Mr. Bagenstos:[5] | No, your Honor, of course not. What we're seeking is an injunction to end the constitutional violations at these two facilities. We submit its not a best practice to say, you know, don't have your guards beat people up in elevators where there is no security cameras, et cetera. |
| The Court: | If I remember what you said earlier, you said that what I have by way of discretion to impose here is linked to the minimum corrective measures that are necessary to safeguard the constitutional rights of the imprisoned persons, right? |
| Mr. Bagenstos: | That's all we seek, your Honor. What's at the end of the findings letter is what we believe would be the remedial measures that would resolve and provide a remedy for the constitutional violations. But, of course, that's up to this Court. We're simply seeking to prove constitutional violations exist and that this Court needs to do something about them. |

---

[4]Ms. Green is counsel for Defendants.

[5]Mr. Bagenstos is counsel for the Justice Department.

| The Court: | Is that nationalized prison practices? |
|---|---|
| Mr. Bagenstos: | Only to the extent that the Eighth and Fourteenth Amendments impose nationwide standards. That's all we're seeking. |
| | .    .    . |
| The Court: | Yeah, we talked about that, but you do, for purposes of record, so everybody is clear, you do concede that best practices is not the relief that's available. |
| Mr. Bagenstos: | That is correct. |

(Transcript of December 16, 2009 Oral Argument, Docket No. 24, pp. 53-55, 57.)

Although Defendants may view the remedies suggested in the Findings Letter as a request for imposition of "best practices," that is not the relief requested in the complaint. In any event, it is ultimately this Court, not the Justice Department, that will decide the minimum corrective measures, if any, that the Constitution requires. If corrective measures are imposed, it will be because the Justice Department proved the existence of constitutional violations that require correction. The CRIPA is therefore constitutional as applied in this case. See United States v. Georgia, 546 U.S. 151, 159, 126 S.Ct. 877, 882, 163 L.Ed.2d 650 (2006) (citing cases and noting that Congress has the power under § 5 of the Fourteenth Amendment to create remedies against the States for actual violations of the Fourteenth Amendment).

Defendants next argue that because the facilities operate under the regulatory scheme governing all New York correctional facilities, the Justice Department must sue the State of New York, not Defendants. This argument also fails. Notwithstanding the state rules and regulations that apply to confinement conditions, the CRIPA specifically

10

authorizes the Attorney General to investigate state and local institutions to determine whether federal constitutional violations exist.  When the Attorney General has reasonable cause to believe that they do, the CRIPA authorizes him to sue municipalities and individual defendants for redress.  <u>See</u> 42 U.S.C. § 1997a (a).  Thus, contrary to Defendants' argument, the Justice Department's suit against them is plainly authorized by the CRIPA.  <u>See id.</u> (permitting the United States to institute a civil action against "any State or political subdivision of a State, official, employee, or agent thereof, or person acting on behalf of a State or political subdivision of a State").  There is no requirement that the Justice Department sue only the State of New York.

Finally, Defendants argue that the CRIPA is unconstitutional as applied because the Justice Department has not specifically identified the policies that are unconstitutional, nor the minimum constitutional standards that apply.[6]  Defendants argue that by requiring the Attorney General to make several threshold determinations to reach a reasonable cause conclusion, "Congress clearly intended to require the government to articulate with specificity which policies or practices of a facility are unconstitutional, the basis for any such determination, and the minimum corrective measures necessary to cure such policies."  (Defendants' Memorandum of Law, Docket No. 15, p. 10.)  There is simply no support in the statute for this sweeping statement, nor do Defendants fully articulate how this poses a constitutional concern.

---

[6]Interestingly, although Defendants repeatedly deny knowledge of the minimal constitutional standards, they state unequivocally that the standards in New York's regulatory scheme "far exceed the minimum requirements of the Constitution."  (Defendants' Memorandum of Law, Docket No. 15, p. 12.)

The CRIPA is a standing statute. <u>Patsy v. Bd. of Regents of State of Fla.</u>, 457 U.S. 496, 507-08, 102 S.Ct. 2557, 2563, 73 L.Ed.2d 172 (1982); <u>United States v. Tennessee</u>, 798 F.Supp. 483, 488 (W.D.Tenn. 1992). It permits the Attorney General to institute an action for equitable relief when he has reasonable cause to believe that inmates are being subjected to egregious and flagrant conditions that violate their constitutional rights and that the deprivation is pursuant to a pattern or practice of resistance to inmates' constitutional rights. <u>See</u> 42 U.S.C. § 1997a (a). By the plain and unambiguous terms of the statute, the elements set forth in § 1997a (a) apply only to the Attorney General's reasonable cause determination. <u>See</u> <u>United States v. Pennsylvania</u>, 902 F. Supp. 566, 578-79 (W.D.Pa. 1995) (noting that § 1997a (a) contains the elements for the Attorney General's reasonable cause determination). They are not, as Defendants argue, elements that must be alleged or proven in a CRIPA action.

Congress left it to the Attorney General's prosecutorial discretion to determine when an action under the CRIPA is necessary to correct constitutional violations. Here, the Attorney General has determined that there is reasonable cause to believe that Defendants are subjecting inmates to egregious and flagrant conditions that are the result of a pattern or practice of depriving inmates of their constitutional rights. Although Defendants vehemently disagree with the Attorney General's conclusion that a CRIPA action is warranted, this Court is not authorized to look behind it — the Attorney General's certification is unreviewable. <u>New York</u>, 690 F.Supp. at 1204.

Accordingly, Defendants' request to dismiss this case on the basis that the CRIPA is unconstitutional as applied is denied.

**B.    The Sufficiency of the Justice Department's Complaint**

**1.    Rules 8 and 10 of the Federal Rules of Civil Procedure**

Defendants also argue that the complaint should be dismissed for failure to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Together, Rules 8 and 10 govern the form of general pleadings.  Under these rules, a complaint must contain a "short and plain statement" of jurisdiction and of the claims asserted, Fed. R. Civ. P. 8 (a)(1) and (2); allegations must be "simple, concise, and direct," Fed. R. Civ. P. 8 (d)(1); claims must be presented in numbered paragraphs and limited, to the extent practicable, to a single set of circumstances, Fed. R. Civ. P. 10(b); and claims based on a separate transaction or occurrence must be stated in a separate count, if doing so would promote clarity, Fed. R. Civ. P. 10(b).  Adherence to these rules provides fair notice and facilitates clear presentation of the matters set forth in the complaint.  See O'Diah v. New York, No. 08-CV-941, 2010 WL 786271, at *9 (N.D.N.Y. Mar. 2, 2010) (citing Powell v. Marine Midland Bank, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) and Phillips v. Girdich, 408 F.3d 124, 128 (2d Cir. 2005)).

Defendants argue that the complaint should be dismissed because the Findings Letter, which is incorporated into the complaint pursuant to Rule 10 (c), lacks a short and plain statement of the claims and is not separated into numbered paragraphs.  It would therefore be unjust and unduly burdensome, Defendants argue, to make them answer or decipher the complaint in its present form.  The Justice Department counters that Rule 10 (c) does not require that exhibits to pleadings comport to the general pleading requirements and Defendants should have no difficulty affirming or denying the allegations

in the complaint itself.

This Court finds that the complaint and its incorporation of the Findings Letter complies with the technical requirements of Rule 8 and 10.  There is no requirement that exhibits attached to a complaint and adopted by reference under Rule 10 (c) contain numbered paragraphs or short, plain statements.  And although Rule 10 (c) states that "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," a defendant is not required to admit or deny the content of an exhibit, as it must the pleading to which the exhibit is attached.  See Fed. R. Civ. P. Rule 8(b) (requiring that a party admit or deny the allegations asserted against it by an opposing party in response to a *pleading*).  Rather, this provision pertains principally to assessing the legal sufficiency of the claims in the complaint.  See, e.g., Miotto v. Yonkers Public Schs., 534 F.Supp.2d 422, 425 (S.D.N.Y. 2008) (citing Rule 10 (c) and noting that "in assessing the legal sufficiency of a claim, the court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference); see also Dangler v. N.Y. City Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir. 1999); De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69 (2d Cir. 1996).

Nonetheless, while the form of the complaint is consistent with the general pleading standards, this Court finds that it violates the spirit of the rules.  Common exhibits to complaints include agency decisions, contracts, patents, correspondence, and the like. In this case, however, the Justice Department has elected to rely on the factually-rich, 50-page Findings Letter in further support of its complaint.  The Findings Letter contains factual allegations of the sort ordinarily found in the body of a complaint.  The Justice Department admitted at oral argument that it was "a deliberate pleading tactic" to simply

attach the Findings Letter to the complaint, rather than file a lengthier complaint that included all of the facts contained in the Findings Letter. (Tr. at p. 37.) Although this form of pleading arguably provides adequate notice, it makes it unnecessarily difficult for Defendants to decipher the scope of the allegations underlying each claim.

The Justice Department's proffered reason for pleading the case in this manner — to avoid limiting its proof — is not persuasive. (Tr. at p. 38.) It appears, rather, that it was simply more expedient for the Justice Department to attach the Findings Letter and accept a denial of the general allegations in the complaint as an answer. (Tr. at pp. 35-37, 40.) This, of course, is of little consolation to Defendants, who are still left to parse the Findings Letter to determine the scope of the Justice Department's claims against them.

To strike a balance, and in keeping with the spirit of the rules that defendants receive adequate notice of the claims against them, this Court will direct the Justice Department to file an amended complaint that shall include the factual allegations it relies on from the Findings Letter. The Justice Department may again attach the Findings Letter itself, if it sees fit. Defendants' request to dismiss the complaint as violative of Rules 8 and 10, however, is denied.

## 2.    Sufficiency of the Complaint

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. FED. R. CIV. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544,127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. <u>Goldstein</u>, 516 F.3d at 56; <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. <u>See</u> <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 129 S.Ct. at 1945 (quoting <u>Twombly</u>, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. <u>Iqbal</u>, 129 S.Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. <u>Id.</u> at 1950; FED. R. CIV. P. 8(a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." <u>Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. <u>Iqbal</u>, 129 S.Ct. at 1950. First, statements that are not entitled to the presumption

of truth — such as conclusory allegations, labels, and legal conclusions — are identified and stripped away.  See Iqbal, 129 S.Ct. at 1950.  Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief."  Id.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim.  Id.

### a.    Municipal and Supervisory Liability

Defendants first argue that the Justice Department fails to state a claim because it has not satisfied the pleading requirements for municipal and supervisory liability. Defendants maintain that the municipal and supervisory liability standards for constitutional violations that apply in actions brought pursuant to 42 U.S.C. § 1983 and Bivens also govern suits brought under the CRIPA.  See Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narcotics, 403 U.S. 388, 396-97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  In Defendants' view, the Justice Department must allege that the supervisory defendants were personally involved and that their actions caused the alleged constitutional violations, or, for municipal liability, that an official custom or policy of the County caused the alleged constitutional violations.  Because no such allegations are contained in the complaint, Defendants contend that it must be dismissed.

The Justice Department counters that the § 1983 and Bivens standards cited by Defendants do not apply because this is an action for injunctive relief brought under the CRIPA, not for damages under § 1983.  It argues that the CRIPA authorizes injunctive

relief "as may be appropriate to insure the minimum corrective measures necessary to insure full enjoyment of [constitutional rights]," which includes injunctive relief against those individuals who have control and authority to implement corrective measures. 42 U.S.C. § 1997a (a). It further argues that Congress's specific inclusion of "[a] political subdivision of a State, official, employee, or agent thereof" as subject to suit evinces Congress's intent that CRIPA actions not be subject to the same supervisory and municipal liability requirements as § 1983 and <u>Bivens</u> actions.

The Justice Department correctly argues that the CRIPA itself imposes no "policy or custom" requirement for municipal liability. The statute's reference to the deprivation of rights being "pursuant to a pattern or practice of resistance to the full enjoyment of such rights" refers not to a municipal liability standard but to specific findings that the Attorney General must make before initiating a CRIPA action. <u>See</u> <u>Pennsylvania</u>, 902 F. Supp. at 578-79 (noting that § 1997a (a) contains the elements for the Attorney General's reasonable cause determination).

But the Justice Department's interpretation of other portions of the CRIPA is not correct. It argues that § 1983 liability standards should not apply because the CRIPA authorizes injunctive, not compensatory relief. Under the Justice Department's construction of the statute, relief is available against any defendant who can effectuate the injunctive relief sought. It argues as follows:

> Injunctive relief under CRIPA runs against such parties as are "appropriate to insure the minimum corrective measures necessary to insure the full enjoyment of" the constitutional rights at issue. 42 U.S.C. § 1997a (a). In other words, relief can reach those management-level officials, such as Defendants here, who have control and authority over the subordinates whose unconstitutional conduct caused the

> Attorney General to file suit, and who can therefore implement
> corrective measures.

(<u>See</u> Justice Department's Memorandum of Law, Docket No. 19, p. 2.)

This position, however, conflicts with the plain language of the statute. <u>See</u> <u>Barnhart v. Sigmon Coal Co., Inc.</u>, 534 U.S. 438, 450, 122 S.Ct. 941, 950, 151 L.Ed.2d 908 (2002) (noting that statutory construction begins with the plain language itself). Under the CRIPA, the Attorney General may seek injunctive relief only against a person or entity that the Attorney General has reasonable cause to believe "*is subjecting*" institutionalized persons to egregious, flagrant conditions that deprive them of their constitutional rights. <u>See</u> 42 U.S.C. § 1997a (a) (emphasis added). Thus, like § 1983, the CRIPA authorizes suit against and relief from only those responsible for the deprivation of rights. <u>See</u> 42 U.S.C. § 1983 (authorizing suit against "[e]very person who . . . subjects, or causes to be subjected" individuals to the deprivation of rights); 42 U.S.C. § 1997a (a) (authorizing relief against "such party" that subjects institutionalized persons to egregious or flagrant conditions that deprive them of their constitutional rights). Nothing in the CRIPA authorizes suits against or relief from those who may simply be in a position to effectuate injunctive relief, as the Justice Department argues. Rather, the CRIPA requires that a defendant be involved in the alleged deprivation of rights. <u>See</u> 42 U.S.C. § 1997a (a).

The Justice Department misreads the CRIPA when it represents that the phrase "such party" in the statute refers to a party against whom injunctive relief may run to insure the implementation of minimum corrective measures. (<u>See</u> Justice Department's Memorandum of Law, Docket No. 19, p. 2.) The statute authorizes the Attorney General to "institute a civil action . . . against such party *for such equitable relief* as may be

appropriate to insure the minimum corrective measures necessary to insure [the full enjoyment of constitutional rights]. 42 U.S.C. § 1997a (a)(emphasis added). Thus, injunctive relief is available against a party that "is subjecting" institutionalized persons to constitutional deprivations, and it is the *relief* that must be appropriate to insure minimum corrective measures.

Citing § 1997a (a), the Justice Department maintains that equitable relief against only those personally involved in constitutional violations would not be equitable relief "against such party . . . as may be appropriate to insure the minimum corrective measures necessary to insure the full enjoyment of" constitutional rights. (See Justice Department's Memorandum of Law, Docket No. 19, p. 13.) Use of the ellipsis in this manner is disingenuous because it eliminates the operative "for such equitable relief" language, resulting in a material change to the statutory language. Rather, the phrase "such party" in the statute refers back to "any State or political subdivision of a State, official, employee, or agent thereof, or other person acting on behalf of a State or political subdivision of a State" that is subjecting institutionalized individuals to unconstitutional conditions. 42 U.S.C. § 1997a (a). And "as may be appropriate to insure the minimum corrective measures necessary" describes the equitable relief that is authorized, *not* who it is authorized to run against.

The Justice Department's misreading of the statute underlies (and undermines) its ultimate conclusion that "[v]icarious liability was therefore contemplated to be, and is, an essential element of CRIPA litigation." (See Justice Department's Memorandum of Law, Docket No. 19, p. 13.) Again, there is no support for this proposition in the statute or caselaw. The injunctive relief the CRIPA authorizes, by the plain terms of the statute,

applies only to a party that is subjecting institutionalized individuals to a violation of their constitutional rights. That party may be a state, political subdivision of a state, official, employee, or agent thereof, or any other person acting on behalf of a state or political subdivision of a state. 42 U.S.C. § 1997a (a). Contrary to the Justice Department's arguments, the CRIPA does not impose vicarious liability or authorize the Attorney General to seek relief against defendants who are not subjecting institutionalized individuals to a deprivation of rights, but who nevertheless have the authority or ability to effectuate injunctive relief. Involvement in the constitutional deprivation on some level is required.

Defendants argue that the correct measure for supervisory and municipal liability under the CRIPA is the § 1983 Monell standard. Section 1983 imposes liability on a municipality when an official custom or policy *causes* an employee to violate an individual's constitutional rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Like supervisory liability, municipal liability in the context of § 1983 actions cannot be premised solely on a *respondeat superior* theory, but must be based on constitutional deprivations caused by an officially promulgated, or *de facto*, governmental "custom" or "policy[.]" Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986).

The existence of municipal policy or custom can be demonstrated in several ways, including: (1) showing an officially promulgated and endorsed municipal policy, Monell, 436 U.S. at 658; (2) showing that actions taken by officials with final policymaking authority caused a constitutional violation, Pembaur, 475 U.S. at 480–81; (3) showing that municipal decisionmaking evidences "deliberate indifference" to the rights of those with whom municipal employees come in contact, including failure to remedy an otherwise

constitutional policy so deficient that policymakers knew or should have known with a high degree of certainty that constitutional violations could result, City of Oklahoma City v. Tuttle, 471 U.S. 808, 819, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), or failure to train employees when training is necessary to prevent the violation of federal rights, City of Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

In this Court's view, this measure of municipal liability is consistent with the CRIPA's authorization of injunctive relief against such party that "subject[s] persons" to unconstitutional conditions. Both the CRIPA and § 1983 authorize the initiation of civil actions to redress constitutional violations. Section 1983 creates a private right of action for damages against any state actor who subjects any individual, or causes him or her to be subjected, to the deprivation of constitutional rights. See 42 U.S.C. § 1983. The CRIPA creates a cause of action for the Attorney General of the United States to seek equitable relief against states, political subdivisions of states, or individuals acting on their behalf, that subject institutionalized individuals to a deprivation of rights. See 42 U.S.C. § 1997a (a).

In addition, application of the § 1983 standard for municipal liability is consistent with the purpose of CRIPA actions, which is to allow the Attorney General to remedy patterns or practices of resistance to the full enjoyment of federal constitutional rights. See 42 U.S.C. § 1997a (a). Although the text of § 1997a (a) does not require the Justice Department to prove a pattern or practice, the statute clearly contemplates that CRIPA litigation will involve systemic violations, as opposed to isolated incidents of unconstitutional conduct. Indeed, the Justice Department in this case has sued the County and supervisory officials, not the individual actors directly responsible for the incidents

22

discussed in the complaint and Findings Letter.  Moreover, the Justice Department writes that "[e]ffective remedies for systemic constitutional violations require that the facilities' management-level staff be involved in solving the problems, even when the harm is being caused by non-management employees," further suggesting that any injunctive relief would be aimed at changing the County's policies and procedures as it pertains to operating the facilities.  (See Justice Department's Memorandum of Law, Docket No. 19, p. 13.)  It is in fact difficult to envision injunctive relief against a municipality — imposed to cure egregious and flagrant deprivations of rights occurring pursuant to a pattern or practice of resistance to the full enjoyment of rights — that would not involve the municipality's policies or practices.

Finally, the only court to assess what standard of proof applies in a CRIPA action concluded that the § 1983 municipal liability standard applies.  In U.S v. Pennsylvania, the Justice Department brought an action under the CRIPA against the Commonwealth of Pennsylvania and officers of the Commonwealth in their official capacities, alleging that they were depriving institutionalized mentally retarded persons at the Ebensburg Center of their constitutional rights, privileges, or immunities.  Pennsylvania, 902 F.Supp. at 577. Noting the lack of guiding authority, the court endeavored to settle the elements that must be demonstrated at trial to secure injunctive relief, first rejecting the Commonwealth's argument that the Justice Department must prove the elements of the Attorney General's "reasonable cause" determination set forth in § 1997a (a).  Id. at 578-79.

Instead, the court concluded that because the CRIPA was enacted to provide standing for the Attorney General to initiate civil rights actions on behalf of institutionalized persons, the elements to be proven at trial are the same as those in any other civil rights

action.  Id. at 579.  Seizing on the fact that the Justice Department sued the defendants only in their official capacities and alleged that they acted or failed to act under color of state law — both of which the Justice Department has also done in this case (Complaint, ¶¶ 8-14, 16) — the court found that, as an "official capacity" suit, it was really one against the government entity.  Id. at 579-580 (citing Kentucky v. Graham, 473 U.S. 159, 165, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)).  It therefore held that the Justice Department must prove that the government entity's policy or custom was a "moving force" behind and "played a part in" the alleged deprivations.  Id. at 580 (citing Graham, 473 U.S. at 166).  Consistent with this finding, the court rejected one of the Justice Department's claims because "the United States did not even attempt to establish that this [alleged violation] was the result of the Commonwealth's 'policy or custom' as implemented at the Center."  Id. at 596.

Although this Court acknowledges that Pennsylvania is not binding authority, it nonetheless finds it persuasive and consistent with this Court's reading of the plain language of the CRIPA.

For all of these reasons, it is this Court's view that the standards for supervisory and municipal liability applicable to § 1983 actions also apply to suits brought by the Attorney General under the CRIPA.

### b.    Sufficiency of the Allegations in the Complaint

Defendants argue that the complaint must be dismissed because it is premised only on legal conclusions and vague, conclusory allegations that do not attribute any unconstitutional conduct or practices to any of the individual defendants or the County of Erie.  This argument is at least partially premised on Defendants' contention that the

24

allegations in the Findings Letter should not be considered part of the complaint for sufficiency purposes. But because this Court is directing the filing of an amended complaint (as discussed above), it is unnecessary at this time to delve into Defendants' sufficiency arguments. That said, this Court has closely examined both the complaint and the Findings Letter. Suffice it to say that considered together, they well support the Justice Department's allegations in this case and plausibly give rise to an entitlement to relief. See Blue Tree Hotels, 369 F.3d at 217 (permitting review of documents incorporated or attached to the complaint to examine its sufficiency); Iqbal 129 S.Ct. at 1950. Taken together, the documents present plausible claims under the CRIPA against Defendants for failing to provide inmates protection from physical and sexual abuse, failing to provide inmates adequate medical and mental health care, and failing to provide inmates safe and sanitary environmental conditions Nonetheless, should Defendants' concerns regarding the sufficiency of the pleading remain after the filing of the amended complaint, the rules permit them to move accordingly. At this time, however, Defendants' request to dismiss the complaint for failure to state a claim is denied.

### 3. Leave to Amend

District courts have broad discretion to grant a party leave to amend their pleadings and the federal rules dictate that leave to amend should be "freely given when justice so requires." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003); Fed. R. Civ. P. 15(a)(2).

Because of this Court's finding that the form of the complaint violates the spirit of Rules 8 and 10, and in light of the clarification of the proper standard for supervisory and municipal liability, this Court finds it in the interests of justice to direct the Justice

Department to file an amended complaint to include the factual allegations from the Findings Letter and allegations to support its supervisory and municipal liability claims.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is denied.  The Justice Department shall, however, file an amended complaint consistent with this decision within 14 days of the filing date of this Decision and Order.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 13) is DENIED.

FURTHER, that the Justice Department shall file an amended complaint within 14 days of the filing date of this Decision and Order.

FURTHER, that Defendants shall file answers to or otherwise move against the amended complaint within 14 days of its filing.

SO ORDERED.


Dated:      July 9, 2010
            Buffalo, New York



                                        /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                            Chief Judge
                                        United States District Court