**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>                                                              )<br>      PLAINTIFFS,                               )<br>                                                              )<br>      v.                                                   )<br>                                                              )<br>ERIE COUNTY, NEW YORK;                )<br>CHRIS COLLINS, COUNTY EXECUTIVE;  )<br>ANTHONY BILLITTIER, IV, MD, COUNTY )<br>HEALTH COMMISSIONER;               )<br>TIMOTHY B. HOWARD, ERIE COUNTY )<br>SHERIFF; MARC WIPPERMAN,           )<br>ERIE COUNTY UNDERSHERIFF;         )<br>ROBERT KOCH, SUPERINTENDENT,   )<br>ADMINISTRATIVE SERVICES DIVISION, )<br>JAIL MANAGEMENT DIVISION;         )<br>MICHAEL F. REARDON, FIRST DEPUTY )<br>SUPERINTENDENT FOR ERIE COUNTY )<br>HOLDING CENTER; DONALD LIVINGSTON, )<br>FIRST DEPUTY SUPERINTENDENT FOR )<br>ERIE COUNTY CORRECTIONAL FACILITY, )<br>                                                              )<br>      DEFENDANTS.                            )<br>                                                              ) | Civil No. 09-cv-0849 |

**MEMORANDUM OF LAW IN SUPPORT OF THE NEW YORK**
**CIVIL LIBERTIES UNION'S MOTION FOR LEAVE TO INTERVENE,**
**TO UNSEAL COMPLIANCE REPORTS, AND TO VACATE**
**THE STANDING ORDER PERMITTING FILING UNDER SEAL**

COREY STOUGHTON
CHRISTOPHER DUNN
BROOKE MENSCHEL*
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 607-3366 (phone)
(212) 607-3318 (fax)

*Counsel for Proposed Intervenor NYCLU*

Dated: June 21, 2012
New York, NY
*Not admitted to the United States District Court for the Western District of New York

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................ 1

**BACKGROUND** ........................................................................................................................ 2

    Department of Justice Lawsuit and Local Attention to the Controversy.................................... 2

    The Court's Role in Monitoring the County's Compliance with the Court-Approved
    Settlement Agreement and the County's Efforts to Seal Compliance Reports ......................... 4

    The NYCLU's and the Public's Interest in Accessing the Court-Ordered TCC Reports
    Monitoring Conditions at Erie County Facilities ....................................................................... 5

**ARGUMENT** .............................................................................................................................. 7

I.    The NYCLU Has Standing to Intervene to Assert Its and the Public's Right
      to Access the TCC Reports....................................................................................................... 7

II.   The First Amendment and Common Law Rights of Public Access to Records of
      Civil Court Proceedings Requires that the TCC Reports Be Unsealed.................................... 7

       A.    The TCC Reports Are Judicial Documents Central to the Court's Role in the
             Resolution of Underlying Litigation and are Presumptively Accessible Under
             Both the Common Law and the First Amendment Right of Access. ......................... 8

       B.    No Countervailing Interests Outweigh the Strong Presumption in Favor of
             Public Access to the TCC Reports. ........................................................................... 11

**CONCLUSION** ........................................................................................................................ 14

**TABLE OF AUTHORITIES**

**CASES**

*Alexandria Real Estate Equities, Inc. v. FAIR*, No. 11-civ-3694,
  2011 WL 6015646 (S.D.N.Y. Nov. 30, 2011) .................................................................. 12

*Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004) ........................................... 9

*Hartford Courant Co. v, Pellegrino*, 380 F.3d 83 (2d Cir. 2004) ..................................... 10

*Hens v. Clientlogic Operating Corp.*, No. 05-cv-381S,
  2010 WL 4340919 (W.D.N.Y. Nov. 2, 1010) .............................................................. 9, 12

*In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291 (2d Cir. 2003) ..................................... 7

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 164 F.R.D. 346 (S.D.N.Y. 1996) ................ 7

*Joji v. Kuwait Airways Corp.*, No. 08-civ-4339, 2010 WL 1286362 (E.D.N.Y. Apr. 2, 2010) .. 12

*Katzman v. Victoria's Secret Catalogue*, 923 F. Supp. 580 (S.D.N.Y. 1996) ..................... 7

*Lugosh v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) ............................ 7, 10, 11, 12

*Matter of New York Times Co.*, 828 F.2d 110 (2d Cir. 1987) ........................................... 13

*NYCLU v. Erie County*, No. 2010-5178 (Sup. Ct. Erie County June 7, 2010) ................... 5

*Schiller v. City of New York*, No. 04-civ-7922, 2006 WL 2788256 (S.D.N.Y. Sept. 27, 2006) ..... 7

*SEC v. Van Waeyenberghe*, 990 F.2d 845 (5th Cir. 1993) ................................................ 9

*United States v. All Funds on Deposit at Wells Fargo Bank in San Francisco, Cal.,
  in Account No. 7986104185*, 643 F.Supp.2d 577 (S.D.N.Y. 2009) ............................... 11

*United States v. Amodeo*, 44 F.3d 141 (2d Cir. 1995) ........................................ 8, 9, 11, 13

*United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) ............................................. 11, 13

*United States v. Aref,* 533 F.3d 72 (2d Cir. 2008) ........................................................ 7, 13

*United States v. Graham*, 257 F.3d 143 (2d Cir. 2001) .................................................. 10

*United States v. Sattar*, 471 F. Supp. 2d 380 (S.D.N.Y. 2006) ........................................ 10

*Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16 (2d Cir. 1984) ...................... 11

**RULES**

Fed. R. Civ. P. 24 .................................................................................................................. 7

**PRELIMINARY STATEMENT**

The New York Civil Liberties Union ("NYCLU") respectfully submits this Memorandum of Law in support of its motion for leave to intervene for the limited purpose of asserting the public's First Amendment and common law rights to access reports regarding Erie County's compliance with the settlement agreement in this case. Shrouding these documents in secrecy is antithetical to principles of open government, deprives the public of its right to monitor the judiciary's role in improving conditions at two Erie County correctional facilities, and is unnecessary. The NYCLU respectfully asks the Court to unseal the existing compliance reports and vacate the standing order permitting future reports to be filed under seal.

Erie County's two correctional facilities have long been the subject of public controversy over inhumane and dangerous conditions of confinement. The United States filed this lawsuit following years of local advocacy and media reporting demanding accountability and reform. The Court-ordered settlement agreement provides the framework for improving conditions at the facilities and addressing this long-standing public controversy. The Court's role in monitoring the County's efforts to comply with the agreement, through two Court-appointed monitors, is the centerpiece of the agreement. The reports that those monitors produce are necessary tools for the Court to fulfill its role under the settlement agreement. Only by examining these reports can the public monitor both the County's progress towards resolution of this controversy and the Court's role in guaranteeing that progress.

The NYCLU asserts this right of access on behalf of the public and to ensure its own ability to participate in ongoing advocacy efforts related to conditions at correctional facilities in Erie County. The NYCLU respectfully asks the Court to grant the motion to intervene to unseal the reports and vacate the standing order.

1

## BACKGROUND

*Department of Justice Lawsuit and Local Attention to the Controversy*

On November 13, 2007, the United States Department of Justice ("DOJ") notified the Erie County Executive that it intended to investigate conditions at the Erie County Holding Center and the Erie County Correctional Facility (together "Erie County Facilities"), with a particular focus on the provision of medical and mental health services, environmental health and sanitation conditions, and protection from harm. *See* Letter from Loretta King, Acting Assistant Attorney Gen., Civil Rights Div., to Chris Collins, Cnty. Exec., Erie Cnty., at 1 (July 15, 2009) ("Findings Letter") (Exhibit B of Docket Entry No. 1). County officials refused to cooperate with DOJ, ceased communication, and barred federal investigators from the Erie County Facilities – actions that were the subject of significant local controversy. *Id.* at 2; Matthew Spina, *Civil Rights Chief Determined to Resolve County's Jail Issues*, Buff. News (Aug. 21, 2010) (attached to Affirmation of Corey Stoughton (June 21, 2012) ("Stoughton Aff.") as Ex. A). Despite Erie County's resistance, DOJ uncovered significant deficiencies in both facilities during its twenty-month investigation. In a fifty-page letter dated July 15, 2009, DOJ cited evidence of inadequate medical services, mental health treatment, and suicide prevention; subpar policies and procedures related to use of force and supervision of inmates; insufficient training and supervision of staff; and deficient environmental and safety conditions. Findings Letter at 8-36. DOJ recommended that the Executive take immediate remedial steps to improve conditions. Findings Letter at 36-49.

In September 2009, as Erie County officials continued to resist federal involvement, DOJ instituted this lawsuit, again generating much public interest in the dispute. *See, e.g.*, Matthew Spina & Dan Herbeck, *Federal Inspectors to Resume Holding Center Examination Tuesday*,

Buff. News (Aug. 21, 2010) (attached to Stoughton Aff. as Ex. B). The complaint alleged that the County acted with deliberate indifference towards the health and safety of inmates and failed to adequately train or supervise employees at the Erie County Facilities. Complaint (Docket Entry No. 1). Despite public pressure and media scrutiny, County officials continued to deny the allegations. When the County interfered with DOJ's efforts to investigate and conduct meaningful discovery, this Court mediated those disputes – a matter that was intensely covered by the media and followed by the public. *See, e.g.*, Matthew Spina, *Civil Rights Chief*, *supra*; Spina & Herbeck, *Federal Inspectors*, *supra*; Matthew Spina, *Collaboration, Not Confrontation, Marks Another County's Response to Jail Probe*, Buff. News (Aug. 21, 2010) (attached to Stoughton Aff. as Ex. C); Donn Esmonde, *Nothing to Hide? Then Stop Hiding*, Buff. News (Aug. 21, 2010) (attached to Stoughton Aff. as Ex. D). The Court ultimately ordered the County to provide DOJ inspectors with access to the Erie County Facilities and allow them to conduct investigations around suicide prevention and mental health. Spina & Herbeck, *Federal Inspectors*, *supra*.

Following eight months of litigation, the Court ordered the parties to enter into mediation on the issues of mental health services and suicide prevention. Order (Docket Entry No. 77). The parties entered into a limited stipulated settlement on mental health services and suicide prevention that the Court adopted on June 22, 2010. Order (Docket Entry No. 91). Under the agreement, the Court appointed a mental health compliance officer who inspected the County's progress and reported back to the Court – again, a development keenly watched by the public and local media. Matthew Spina, *County Again Resists Justice Dept. Presence During Jail Inspection*, Buff. News (Nov. 9, 2010) (attached to Stoughton Aff. as Ex. E).

After entering the agreement, the Court denied the County's petition to dismiss the remaining claims and allowed DOJ to file an Amended Complaint. Decision and Order (Docket Entry No. 94).[1] During the year that followed, County officials continued to bar DOJ representatives from the Erie County Facilities. The Court, through the Court-appointed officer, was the sole force ensuring that Erie County complied with the existing agreement.

*The Court's Role in Monitoring the County's Compliance with the Court-Approved Settlement Agreement and the County's Efforts to Seal Compliance Reports*

Nearly four years after DOJ began its investigation, the Court entered a stipulated order of dismissal adopting the parties' comprehensive settlement agreement on August 18, 2011. Stipulated Order (Docket Entry No. 227). The Stipulated Order mandates a host of remedial measures including policy and procedure development, training, additional staffing, enhanced recordkeeping, and reporting requirements. *Id.* The Court appointed two Technical Compliance Consultants ("TCCs") to monitor the parties' progress towards compliance with the terms of the agreement. *Id.*, § VI(A). Neither party maintains supervisory authority over the TCCs; only the Court can unilaterally terminate them or appoint a new expert to monitor conditions. *Id.*, § VI(B), (C).

The Stipulated Order provides that the TCCs will file semi-annual reports with the Court and provide copies to the parties. *Id.*, § VI(I). The parties, in drafting the settlement agreement, included a provision indicating that those reports are not subject to disclosure and are only admissible in enforcement proceedings in this action. *Id.*, § VI(H).

In February 2012, the County petitioned the Court to allow the TCC Reports to be filed under seal pursuant to this provision of the settlement agreement. Motion to Seal (Docket Entry No. 231). DOJ did not oppose the motion. Response to Motion to Seal (Docket Entry No. 234).

---

[1] DOJ filed its amended complaint on July 23, 2010.

On March 29, 2012, seeing no objections to the motion, the Court entered a standing order allowing the TCCs to file their semi-annual reports under seal. Order (Docket Entry No. 240). Since then, several compliance reports appear to have been filed under seal or sealed pursuant to the March Order. *See, e.g.,* Docket Entries No. 103, 228, 238, 241, 242, and 243.

*The NYCLU's and the Public's Interest in Accessing the Court-Ordered TCC Reports Monitoring Conditions at Erie County Facilities*

The NYCLU has long advocated for transparency and accountability for unconstitutional conditions at the Erie County Facilities. In response to media scrutiny and allegations that the County spent excessive amounts of taxpayer dollars to thwart DOJ's investigation, *see* Spina, *Federal Inspectors*, *supra*, the NYCLU sought to uncover records that would illustrate the fiscal impact of the County's actions. In October 2009, the NYCLU filed a request under the Freedom of Information Law ("FOIL") seeking records related to County expenditures defending against investigations and legal actions concerning the conditions at the Erie County Facilities. Stoughton Aff. ¶ 3. After the County denied both the request and the administrative appeal, the NYCLU filed a lawsuit in June 2010 under Article 78 of the Civil Practice Laws and Rules challenging the County's refusal to release the information. *NYCLU v. Erie County*, No. 2010-5178 (Sup. Ct. Erie County June 7, 2010). The case was resolved in the NYCLU's favor and a state Supreme Court judge ordered the County to produce documents responsive to the NYCLU's request in August 2010. Order, *NYCLU v. Erie County*, No. 2010-5178 (Sup. Ct. Erie County Aug 30, 2010) (attached to Stoughton Aff. as Ex. F).

In addition, the NYCLU represented three nonparty organizations seeking to quash subpoenas issued by Erie County in this action, seeking documents related to advocacy against unconstitutional conditions in the Erie County Facilities. Mem. Supp. Mot. to Quash Subpoenas, (Docket Entry No. 214).

Upon learning of the County's effort to seal the TCC Reports in this case, the NYCLU filed a FOIL request with the Erie County attorney and the Erie County Sheriff's Office. Letter from C. Stoughton, Senior Staff Atty., NYCLU, to J. Toth, Cnty. Atty., Erie Cnty., and Timothy Howard, Sheriff, Erie Cnty. (Apr. 13, 2012) ("FOIL Request") (attached to Stoughton Aff. as Ex. G). The FOIL Request sought copies of reports that had been filed by the TCCs and the mental health compliance officer. *Id.* The County denied the FOIL Request on the grounds that the Court had ordered that the reports be kept confidential and the NYCLU appealed. Letter from C. Stoughton, Senior Staff Atty., NYCLU, to T. Callahan, Appeals FOIL Officer, Erie Cnty. (May 11, 2012) ("FOIL Appeal") (attached to Stoughton Aff. as Ex. H). The County denied the FOIL Appeal on May 18, 2012. Letter from T. Callahan, FOIL Appeals Officer, Erie Cnty., to C. Stoughton, Senior Staff Atty., NYCLU (May 18, 2012) (attached to Stoughton Aff. as Ex. I). The NYCLU now seeks to intervene in order to access those reports.

Since DOJ began its investigation, the NYCLU has continued to monitor the Erie County Facilities and worked to promote public access to information regarding Erie County's expenditures, facility conditions, and treatment of inmates. *See* Stoughton Aff. ¶¶ 3-4. More generally, throughout the NYCLU's 60-year history, the organization has consistently advanced the public's right to access information through extensive advocacy under the federal Freedom of Information Act and New York's FOIL. *Id.* ¶ 3. The NYCLU has also demonstrated its commitment to promoting improved conditions at correctional facilities throughout New York and worked to hold local officials accountable for constitutionally deficient public facilities. *Id.* ¶ 2.

## ARGUMENT

**I. The NYCLU Has Standing to Intervene to Assert Its and the Public's Right to Access the TCC Reports.**

The NYCLU meets the requirements to intervene both as of right and with the court's permission, pursuant to Fed. R. Civ. P. 24.[2] "A motion to intervene to assert the public's First Amendment right of access . . . is proper." *United States v. Aref,* 533 F.3d 72, 81 (2d Cir. 2008). Federal courts in the Second Circuit routinely grant intervenor status to parties seeking to unseal judicial documents pursuant to the First Amendment and common law right of public access. *See, e.g., Katzman v. Victoria's Secret Catalogue*, 923 F. Supp. 580, 583 (S.D.N.Y. 1996); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 164 F.R.D. 346, 350-51 (S.D.N.Y. 1996); *Schiller v. City of New York*, No. 04-civ-7922, 2006 WL 2788256 (S.D.N.Y. Sept. 27, 2006).

The NYCLU's stated interest in promoting its own and the public's access to judicial documents filed under seal in this action is sufficient to warrant intervention as of right. The NYCLU has a long-standing record of advocating for open government and judicial transparency. *See* Stoughton Aff. ¶ 2. Likewise, the NYCLU has a specific history of advocating for transparency and accountability regarding conditions at the Erie County Facilities. *See* Background section, *supra*; Stoughton Aff. ¶¶ 3-4.

**II. The First Amendment and Common Law Rights of Public Access to Records of Civil Court Proceedings Requires that the TCC Reports Be Unsealed.**

Under the Second Circuit's standards for sealing judicial documents adopted in *Lugosh v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006), the TCC Reports at issue here should be unsealed. Absent a compelling reason for sealing judicial documents such as the TCC Reports, public access is presumed. *Id.* at 120. In this case, the public's significant interest in

---

[2] The legal analysis for permissive intervention and intervention as of right turn on "[s]ubstantially the same factors." *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 n.5 (2d Cir. 2003).

7

understanding these judicial proceedings surrounding an issue of intense public concern far outweighs any conceivable reason for suppressing the TCC Reports. Indeed, no party to this litigation has offered any compelling reason for why these records should be sealed. The Court should vacate the Standing Order and unseal existing reports.

> A. *The TCC Reports Are Judicial Documents Central to the Court's Role in the Resolution of Underlying Litigation and are Presumptively Accessible Under Both the Common Law and the First Amendment Right of Access.*

Controlling Second Circuit authority holds that compliance reports like the TCC Reports at issue here are "judicial documents" entitled to the strong presumption of public access. In *United States v. Amodeo* ("*Amodeo I*"), the Second Circuit held that nearly identical reports prepared by a "Court Officer" appointed as the monitor of a consent decree in a RICO action were "judicial documents." 44 F.3d 141 (2d Cir. 1995). That decision's reasoning applies with equal force to the facts of this case:

> While it is true that the Court Officer was not required to keep the court informed of the status of her investigation, she deemed it "prudent" to file reports . . . from time to time. . . . [T]he court stated that it received the Reports "to make sure that the court officer was doing what she was appointed to do – that is the only reason for my having to review it – and to make sure that the case doesn't go to sleep, but letting the court officer do what the court appointed her to do." . . . The Consent Decree itself makes the reports and exhibits filed by the Court Officer relevant to the performance of a judicial function and useful in the judicial process. . . . [W]e do not hesitate to classify her reports, including the exhibits filed under seal, as judicial documents subject to the common law presumption of public access.

44 F.3d at 146.

This Court's role in the judicial process of enforcing and monitoring the settlement of this litigation is as robust as, if not more robust than, the court's role in *Amodeo I.* The Stipulated Order outlines the Court's central role in entering the Order, evaluating the parties' compliance with the settlement terms, adjudicating enforcement proceedings if necessary, and terminating the Stipulated Order once the parties achieve compliance. *See* Stipulated Order,

8

§ VII, VIII. In order to discharge these functions, the Court relies on the TCC Reports to provide ongoing assessments of progress towards compliance and conditions in the Erie County Facilities. *Id.*, § VI(I)(3), (6). Even absent any allegation of noncompliance, the TCC Reports allow the Court to "make sure that the [TCCs are] doing what [they were] appointed to do" and "to make sure that the case doesn't go to sleep" while the compliance stage of this litigation proceeds. *Amodeo I*, 44 F.3d at 146. In the event that either party fails to comply with the terms of the Stipulated Order, this Court maintains jurisdiction to adjudicate enforcement proceedings, and the Stipulated Order explicitly contemplates that the TCC Reports will be considered during such proceedings. Stipulated Order, § VII(A), VI(G). The Court alone retains authority to appoint, substitute, or terminate those monitors. *Id.*, § VI(B), (C), (I).

The notion that compliance reports are "judicial documents" is consistent with long-standing precedent holding that court-ordered settlement agreements themselves are judicial records subject to the presumption of public access. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004) ("Once a settlement is filed in district court, it becomes a judicial record.") (quoting *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993)); *Hens v. Clientlogic Operating Corp.*, No. 05-cv-381S, 2010 WL 4340919, at *2 (W.D.N.Y. Nov. 2, 1010) ("[T]here is a strong presumption in favor of keeping settlement agreements . . . unsealed and available for public view.") (citation omitted). Given the centrality of the compliance reports to the execution of the settlement in this case, the public's interest in access to those documents flows from the public's interest in understanding the terms of this settlement between two government agencies.

Notably, compliance reports mandated by court-enforceable agreements between the Department of Justice and local government agencies are routinely publicly filed in court and

9

made available on public websites.³ Moreover, the parties themselves essentially concede that the public may have a right to access the reports under federal public disclosure laws. Stipulated Order, § V(H) (providing that the United States will notify Erie County of any disclosure of the TCC Reports in response to a Freedom of Information Act request, but not suggesting that any such request could be denied). The Second Circuit has instructed courts to use "experience and logic" to determine whether a document should be open to the public, and to consider whether documents of that type "have historically been open to the press and general public." *Lugosh*, 435 F.3d at 120 (quotations omitted); *see also United States v. Sattar*, 471 F. Supp. 2d 380, 384-85 (S.D.N.Y. 2006) (holding that the "experience prong requires a court to determine whether the place and process have historically been open to the press and the general public") (citation omitted); *Hartford Courant Co. v, Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004) (holding the same for the common law right of access); *United States v. Graham*, 257 F.3d 143, 151 (2d Cir. 2001) (holding that where documents "are usually filed with the court and are generally available, the weight of the presumption is stronger"). Given the fact that similar reports are typically not filed under seal and that the parties' own agreement suggests a means of public access to these reports, past experience and the parties' own logic support the conclusion that the TCC Reports should be open to the public.

In determining whether the presumption of public access should apply, the Second Circuit also instructs the court to consider whether public access "plays a significant positive role." *Lugosh*, 435 F.3d at 120. In this case, public access enhances accountability of the parties, the TCCs, and the Court, and promotes incentives for reform of the Erie County Facilities. Since its inception, this case has been heavily scrutinized by the public and the media. *See* Background,

---

³ Several examples can be found on the website of DOJ Civil Rights Division's Special Litigation Section, available at: http://www.justice.gov/crt/about/spl/findsettle.php#corrections.

Part I *supra.* The public's ability to access the TCC Reports, and thereby monitor the Court's judicial process with regard to monitoring the Stipulated Order, "enhances the quality and safeguards the integrity of the factfinding process, fosters an appearance of fairness, and heightens public respect for the judicial process, while permitting the public to participate in and serve as a check upon the judicial process." *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984) (internal citations omitted); *see also United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) (holding that the right of access is "based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice") ("*Amodeo II*"); *United States v. All Funds on Deposit at Wells Fargo Bank in San Francisco, Cal., in Account No. 7986104185*, 643 F.Supp.2d 577, 583 (S.D.N.Y. 2009) ("Access to such documents promotes the legitimate interests of the public and the press in keeping a watchful eye on the workings of public agencies and publishing information concerning the operation of government.") (citation omitted).

    B. *No Countervailing Interests Outweigh the Strong Presumption in Favor of Public Access to the TCC Reports.*

Since Erie County offered no explanation in their motion for leave to file under seal for why sealing the TCC Reports is necessary, there is no identifiable countervailing interest to counteract the strong presumption in favor of disclosing the Court-ordered TCC Reports. *See, e.g.*, *Amodeo I*, 44 F.3d at 148 (2d Cir. 1995) (stating that the burden is on party seeking to restrict public access to "demonstrate that the interests favoring non-access outweigh those favoring access"); *Lugosh*, 435 F.3d at 120, 124 (holding that sealing documents is warranted under the common law only if the court finds that the "countervailing factors" outweigh the presumption of access and under the First Amendment only by "specific, on-the-record findings that sealing is necessary to preserve higher values" and that "the sealing order is narrowly

tailored to achieve that aim"); *Alexandria Real Estate Equities, Inc. v. FAIR*, No. 11-civ-3694, 2011 WL 6015646, at *2-3 (S.D.N.Y. Nov. 30, 2011) (denying motion to seal where party carrying the burden failed "to identify interests that rise to the level of higher values").

      The County's motion to file these records under seal relied exclusively on language in the Stipulated Order that "sets forth that '[t]he TCC is not a State/County or local agency or an agent thereof, and accordingly the records maintained by the TCC will not be deemed public records subject to public inspection. . . . [and n]o report issued pursuant to this Stipulated Order shall be subject to disclosure.'" Decl. of Michelle Parker in Support of Defendant's Motion to Permit A Filing Under A Seal, Procedural History and Statement of Facts, ¶ 13 (citing Stipulated Order, Docket No. 225-1, § VI(G), (H)). However, an agreement by the existing parties to seal judicial documents is not a sufficient basis for violating the public's right to access civil judicial proceedings. *See, e.g.*, *Hens*, 2010 WL 4340919, at *3 ("This Court joins the overwhelming majority of district courts in finding that a stipulation to seal does not outweigh the strong presumption of public access."); *Joji v. Kuwait Airways Corp.*, No. 08-civ-4339, 2010 WL 1286362, at *2 (E.D.N.Y. Apr. 2, 2010) ("Because the parties have shown no particularized need for confidentiality arising from the specific circumstances of this case, . . . they have not provided a sufficient reason to frustrate the public's legitimate interest in assessing the court's oversight of the . . . compromise.").

      Even if the County had attempted to demonstrate a compelling interest to support secrecy, none of the factors that would favor sealing outweigh the public's interest in accessing the TCC Reports. The factors that the Second Circuit has previously identified—such as impairing law enforcement or national security, protecting privacy, or preserving the attorney-client privilege—are not at issue here. *See Lugosh*, 435 F.3d at 120, 125 (identifying privacy and

12

law enforcement as valid countervailing interests); *Aref*, 533 F.3d at 83 (upholding sealing on national security grounds); *Amodeo II*, 71 F.3d at 1050 (upholding sealing to protect the privacy interests of third parties). In regard to privacy, the Stipulated Order proactively addresses any concerns that might arise by mandating that the TCC Reports will "be written with due regard for the privacy interests of individual inmates and staff." Stipulated Order, § VI(I)(2). There is no reason to believe that the reports, if released, would unduly compromise any individual's privacy.

Even if any person's privacy interests were at stake in the release of these reports, those interests could be adequately addressed through less restrictive alternatives including redacting personal information or sealing particularly sensitive sections of the reports. *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) ("[T]he wholesale sealing of the motion papers was more extensive than necessary . . . . To protect whatever privacy interests may be prejudiced by disclosure of the motion papers, redaction . . . , as opposed to the wholesale sealing of the papers, might be appropriate in this case."); *Amodeo I,* 44 F.3d at 147 ("[W]e think that it is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document."). Suppressing the reports in their entirety is unnecessarily overbroad.

Since Erie County did not assert any countervailing interests or higher values and any such interests could be adequately addressed through more limited alternatives, the presumption of public access to the TCC Reports cannot be overcome. The Court should unseal those reports and vacate the Standing Order permitting future reports to be filed under seal.

## **CONCLUSION**

The well-established right of the public to access judicial documents provides a strong presumption in favor of disclosing the TCC Reports. The parties failed to carry their burden to overcome that presumption and instead merely relied on a provision of the Stipulated Order to justify sealing the TCC Reports. However, a private agreement between parties is insufficient to warrant violating the public's right to access judicial documents. In light of the significant value of the TCC Reports to ensure accountability and the failure of either of the existing parties to assert any countervailing interests that justify sealing the reports, the NYCLU respectfully asks the Court to grant the motion to intervene, unseal the TCC Reports, and vacate the Standing Order.

Respectfully submitted,

_____
COREY STOUGHTON
CHRISTOPHER DUNN
BROOKE MENSCHEL*
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 607-3366 (phone)
(212) 607-3318 (fax)

*Counsel for Proposed Intervenor NYCLU*

Dated: June 21, 2012
New York, NY

*Not admitted in the United States District Court for the Western District of New York